**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **K.T.**

**No. 20-0924** (Ohio County 19-JA-129)

**MEMORANDUM DECISION**

Petitioner Mother I.T., by counsel John M. Jurco, appeals the Circuit Court of Ohio County's October 23, 2020, order terminating her parental rights to K.T.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee Niezgoda, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Richard W. Hollandsworth, filed a response on behalf of the child also in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in not extending petitioner's post-adjudicatory improvement period and terminating her parental rights.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In November of 2019, the DHHR filed a child abuse and neglect petition against petitioner. The DHHR related an extensive history of Child Protective Services ("CPS") involvement, beginning with the child's birth in 2017, when he was born with benzodiazepines, THC, opiates, and cocaine in his system. Following the child's birth, CPS provided in-home safety services to petitioner, which she completed, and the case was closed in May of 2018 without proceeding to court intervention. However, a subsequent referral was made in March of 2019, alleging that petitioner and the child were living in a drug house and that petitioner continued to abuse drugs and expose the child to drug abuse and inappropriate people. Petitioner was reportedly in an abusive relationship, and her boyfriend was very violent, having beat petitioner and thrown the child into a stairway banister. In response to these allegations, the DHHR reopened petitioner's

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

CPS case and provided additional services. Petitioner failed to comply with the services, testing positive for cocaine, alcohol, and marijuana on the occasions she underwent testing while refusing to submit to drug screens on other occasions. Petitioner also refused parenting and adult life skills classes, counseling, and drug treatment. Nevertheless, the DHHR continued providing services and drug screens.

By May of 2019, a service provider reported concerning behaviors from petitioner. Specifically, the service provider observed the child with a large pocketknife that petitioner had left within his reach. The service provider also observed petitioner driving with the child improperly restrained in the car. Finally, after the service provider witnessed petitioner shaking the child out of frustration, the DHHR implemented a temporary protection plan requiring daily supervision of petitioner and the child.

Approximately one week later, law enforcement officers responded to petitioner's neighbor's home after reports of gunshots. Officers observed a bullet hole in the neighbor's home, which was confirmed to have originated from petitioner's home. Upon further investigation, officers found multiple bullet holes in petitioner's home and observed it to be in deplorable condition and infested with cockroaches. A jar of marijuana was also found in the home. Petitioner admitted her continued marijuana use to her service provider, and the DHHR initiated a new safety plan and continued to work with petitioner to maintain the child in the home.

The safety plan was terminated after petitioner failed to cooperate with services and tested positive for THC, alcohol, and cocaine. The DHHR filed the petition chronicling the efforts to maintain the child in the home and concluding that petitioner abused and neglected the child through her pervasive drug abuse; her failure to provide the child with food, medical care, and a safe and sanitary home; her exposure of the child to domestic violence and inappropriate persons; and her use of inappropriate discipline. Shortly after the filing of the petition, petitioner waived her preliminary hearing.

At an adjudicatory hearing held in December of 2019, petitioner stipulated that she abused and neglected the child through her drug abuse and resulting inability to safely parent the child. However, petitioner minimized other allegations, such as domestic violence and her failure to cooperate in efforts to treat her drug abuse. Nevertheless, the circuit court accepted petitioner's stipulation, adjudicated her as an abusing parent, and granted her a post-adjudicatory improvement period.

In February of 2020, the circuit court held a status hearing. The circuit court was advised that petitioner was not satisfactorily complying with her improvement period. Specifically, petitioner was still abusing drugs, associating with inappropriate people, and had been "mentioned in police reports." The circuit court was advised that the multidisciplinary team ("MDT") had recommended that petitioner attend inpatient drug treatment but that petitioner was very reluctant and stated that "if she does go, she will only stay for 30 days and no longer." The circuit court informed petitioner that it would not force her to attend inpatient treatment but that she needed to put the child before her needs and that it would not return a child to a parent who continued to abuse drugs.

In June of 2020, the circuit court held a hearing on the DHHR's motion to terminate petitioner's improvement period and petitioner's motion to extend her improvement period. At that time, the circuit court determined it had a conflict in the case regarding the child's father and adjourned the case so that the matter could be transferred to another circuit judge. The matter reconvened under a new judge in August of 2020. In the interim, petitioner's improvement period expired by its own terms. As such, the DHHR determined that its motion was moot, and the circuit court proceeded on petitioner's motion to extend her improvement period. Petitioner's counsel acknowledged that, at the time the motion was filed, the COVID-19 pandemic had delayed services but since that time, "providers have reopened, there's always been drug testing, there has been drug testing since the opening up. So that excuse or reason in the original motion is not as relevant now as it was then, just so the [c]ourt understands that." Petitioner's counsel proffered that petitioner maintained employment and housing but struggled with drug treatment throughout the proceedings. Counsel stated that petitioner began an intensive outpatient treatment program in January of 2020 but continued to test positive for drugs. "She's always tested positive for either pot or cocaine throughout this case." Counsel stated that the MDT urged petitioner to attend inpatient drug treatment, but she delayed seeking a program and the COVID-19 pandemic hindered further efforts. Petitioner denied recent marijuana use despite recent screens showing her levels had increased. Further, the DHHR presented drug screens showing that petitioner tested positive for marijuana, alcohol, and/or cocaine consistently since the petition's filing. Indeed, petitioner had not submitted a single negative screen from November of 2019 through August of 2020.

The DHHR and the guardian opposed petitioner's motion to extend her improvement period, citing her continued drug use, failure to comply with intensive outpatient treatment, and her continued refusal to enroll in inpatient drug treatment. Petitioner proffered that she would be entering a drug detoxification program immediately after the hearing and that, following her completion of the program, she would be entering inpatient drug treatment. At the conclusion of the hearing, the circuit court denied petitioner's motion for an extension of her improvement period. The circuit court found that petitioner had not fully participated in her post-adjudicatory improvement period and that there was no evidence that she was likely to participate should an extension be granted.

The circuit court held the final dispositional hearing in October of 2020. Petitioner failed to attend, despite having notice of the same, but was represented by counsel. A DHHR worker testified regarding petitioner's extensive history of CPS interventions. The worker testified that, prior to the petition's filing, services such as parenting and adult life skills classes were offered but petitioner believed she did not need them. Safety services were also put in place but petitioner "would not follow through with anything." Although the worker attempted to help petitioner enter a drug treatment program, petitioner repeatedly responded "I don't have a problem."

A service provider testified regarding petitioner's noncompliance with services following the petition's filing. The service provider testified that petitioner was offered parenting and adult life skills classes and supervised visitation but that she was discharged from services due to her lack of compliance. The service provider testified that petitioner failed to consistently drug screen, tested positive for illicit drugs when she did submit to screens, failed to regularly attend services, and became erratic and unresponsive to teaching during the sessions she did attend. The service provider further testified that visits with the child were terminated because of petitioner's erratic

behavior and her attitude towards the child, which frightened the child. Petitioner also left some visits early and missed others entirely.

A CPS worker testified that petitioner "has been very good at talking" and explained that petitioner always described what treatment and services she was going to seek out but "none of that happened." The CPS worker stated that petitioner was aggressive with the MDT and angry about the development of an improvement period as she did not believe she needed services. The CPS worker stated that petitioner failed to follow through with treatment, including intensive outpatient drug treatment, and continued to associate with drug abusers. Further, petitioner allegedly was in a relationship with a man who was currently involved in his own CPS case and shared the same substance abuse issues as petitioner. As such, the CPS worker recommended the termination of petitioner's parental rights.

At the conclusion of the hearing, the circuit court found that petitioner failed to successfully complete her improvement period, failed to appear at the dispositional hearing, continued to test positive for illicit substances since the last hearing, and failed to remedy the conditions of abuse and neglect. The circuit court specifically found that a less-restrictive dispositional alternative was not warranted and that the DHHR had met its burden of proving that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future and that termination of her parental rights was in the child's best interests. Accordingly, the circuit court terminated petitioner's parental rights. Petitioner appeals the October 23, 2020, dispositional order.[2]

The Court has previously established the following standard of review in cases such as this:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

_____

[2]The father's parental rights were also terminated below. The child was placed with a family member and the permanency plan is adoption by that family member.

On appeal, petitioner argues that the circuit court erred in not extending her post-adjudicatory improvement period[3] and in terminating her parental rights rather than imposing a less-restrictive alternative, such as disposition pursuant to West Virginia Code § 49-4-604(c)(5).[4] Petitioner contends that there was a reasonable likelihood that she could have corrected the conditions of abuse or neglect and provides a long list of reasons in support of this contention, including that testimony regarding the March of 2019 domestic violence incident was hearsay; that any evidence regarding her alleged relationship at the time of the dispositional hearing was not proven; that the circuit court stated it was generally in favor of imposing disposition pursuant to West Virginia Code § 49-4-604(c)(5) to persons with drug issues; that any hostility she showed towards the proceedings was outweighed by her participation; that she had had a hard life which merited consideration; that her psychological evaluation offered hopeful recommendations for petitioner to improve her parenting; that she maintained employment at various times throughout the proceedings; that she had a support system to assist her; and that the child was placed with a family member and termination was not necessary for his welfare. Petitioner notes that "Disposition 5" requires a finding that a parent is "unwilling or unable to provide adequately for the child's needs," which she asserts was warranted in this case given her numerous positive drugs screens. She argues that given the evidence above, this would have been a more appropriate disposition than the termination of her parental rights.

Here, the circuit court did not err in denying petitioner's motion for an extension of her improvement period due to her failure to comply with the terms and conditions of that improvement period. Petitioner failed to comply with parenting and adult life skills classes such that she was discharged from services by her service provider. Further, petitioner's behavior during visits with the child were erratic and scared the child, causing the provider to terminate visits. Petitioner also failed to satisfactorily comply with intensive outpatient treatment, missed several

---

[3]West Virginia Code § 49-4-610(6) governs extensions to improvement periods and provides that

> [a] court may extend any improvement period . . . for a period not to exceed three months when the court finds that the respondent has substantially complied with the terms of the improvement period; that the continuation of the improvement period will not substantially impair the ability of the [DHHR] to permanently place the child; and that the extension is otherwise consistent with the best interest of the child.

*See also* Syl. Pt. 7, *In re Isaiah A.*, 228 W. Va. 176, 718 S.E.2d 775 (2010) (holding that the circuit court must make the findings specified in West Virginia Code § 49-4-610(6) prior to granting an extension of an improvement period).

[4]West Virginia Code § 49-4-604(c)(5) provides as follows:

> Upon a finding that the abusing parent or battered parent or parents are presently unwilling or unable to provide adequately for the child's needs, commit the child temporarily to the care, custody, and control of the department, a licensed private child welfare agency, or a suitable person who may be appointed guardian by the court.

drug screens, and testified positive for marijuana and/or alcohol and cocaine when she did submit to drug screens. Given this evidence, the circuit court properly found that petitioner had not complied with her improvement period and would not comply with an extension of the same. Accordingly, we find that petitioner is entitled to no relief in this regard.

The evidence set forth above likewise supports the termination of petitioner's parental rights. West Virginia Code § 49-4-604(c)(6) provides that circuit courts are to terminate parental rights upon finding that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the child's welfare. West Virginia Code § 49-4-604(d)(3) provides that a circuit court may find that there is no reasonable likelihood that the conditions of abuse and neglect can be substantially corrected when the abusing parent has

> not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health, or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare, or life of the child.

The record establishes that petitioner failed to follow through with rehabilitative efforts designed to reduce or prevent the abuse or neglect of the child. She was granted a myriad of services designed to keep the child in her custody and address the conditions of abuse and neglect; however, she was hostile towards CPS workers and providers and denied that she had any drug issues, despite ultimately stipulating to having a drug abuse issue. After her request for a post-adjudicatory improvement period was granted, petitioner failed to comply with intensive outpatient treatment, refused to attend an inpatient treatment program longer than thirty days, and repeatedly tested positive for marijuana, alcohol, and cocaine. While petitioner's psychological evaluation provided recommendations for her to improve her parenting skills, the evaluator opined that petitioner did not currently have the parental capacity to care, protect, and change in order to provide adequately for the child and opined that petitioner should demonstrate six months of sobriety, which she failed to do. Further, petitioner was discharged from services and behaved so erratically that her visits with the child were suspended. Moreover, the CPS worker testified that petitioner entered a relationship with a person who had an open CPS case and maintained associations with other inappropriate people. Although petitioner claims that hearsay evidence was presented, she fails to cite to any portion of the record demonstrating that she objected to the same. This Court has held that "'[o]ur general rule is that nonjurisdictional questions . . . raised for the first time on appeal, will not be considered.' *Shaffer v. Acme Limestone Co., Inc.*, 206 W. Va. 333, 349 n. 20, 524 S.E.2d 688, 704 n. 20 (1999)." *Noble v. W.Va. Dep't of Motor Vehicles*, 223 W. Va. 818, 821, 679 S.E.2d 650, 653 (2009).

Lastly, concerning petitioner's claim that her situation was appropriate for disposition pursuant to West Virginia Code § 49-4-604(c)(5), we have previously held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] may be employed without the use of intervening less restrictive

6

alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Given petitioner's failure to address the issues of abuse and neglect despite the plethora of services provided below, we find that the circuit court did not err in terminating her parental rights.

For the foregoing reasons, we find no error in the decision of the circuit court, and its October 23, 2020, order is hereby affirmed.

Affirmed.

**ISSUED**:  June 3, 2021

**CONCURRED IN BY**:

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton